FRANKLIN S. DOBBINS *vs.* JOHN A. LANG & others.

Suffolk.    April 2, 1902. — May 21, 1902.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Negligence*, Contributory, Employers' liability, assumption of risk.

The plaintiff, a boy in a machine shop, in operating a steam power machine for cutting out metals which was controlled by a treadle, found that a box which had been placed beneath the machine was in the way of his foot as he withdrew it from the treadle. He tried to find his employer, to ask him to have the box removed as he feared his foot might catch on it. He failed to find him, and returning to the machine resumed his work. His foot caught against the box, so that he was unable to remove the pressure from the treadle, and the die came down on his hand and cut off two fingers. *Held*, that he could not recover from his employer for this injury, as he was not in the exercise of due care, and also assumed the risk of the danger he had foreseen.

TORT by a boy in a machine shop against his employers for the loss of two fingers cut off by a steam power punch press which the plaintiff was engaged in operating. Writ in the Municipal Court of the City of Boston dated October 12, 1900.

On appeal to the Superior Court the case was tried before *Bond*, J. It appeared that the machine was used for stamping and cutting metals into various forms, and its operation was controlled by a lever moved by the foot of the operator pressing upon a treadle. Dies of various kinds could be used in the press. Some of the dies used had an opening in them which permitted the finished product to drop into a box placed beneath the press, while other of the dies used required the operator to place the work on the die with his fingers, and after the operation to remove the stock from the die.

The plaintiff was seventeen years old and on May 1, 1900, entered the defendants' employ as an apprentice to learn the trade of a machinist. The accident occurred on September 15

of the same year. The plaintiff in his testimony described the accident as follows:

" On the day of the accident I was working on a bench in one side of the shop. John Lang came to me and said that he had a job on a large upright press for me to do; he showed me a small piece of brass, a stamp, and he told me just as soon as I got through the job I was working on to go over there and do that job; I had worked on that press once before for part of a day, but not on the work I did on the day of the accident, but when I worked on the press before I did not have to put my hands under the dies; I don't know exactly how long before; the press was a very large upright press and it was operated by steam and a lever; there was a foot lever and you pressed the foot lever with your foot and the die drops down upon the other part of the die which is stationary, and by that means all sorts of novelty work and brass and steel are cut and died or stamped. The press is supported by four legs; there is simply a lever underneath; the bottom of the press is high enough from the floor so that you can sit down in a chair and have your knees free from the upper part. The lever is attached to the upper part of the press by a wire; when you press upon the lever it causes a revolution; the upper portion of the die or punch, or whatever it may be, is forced down. The stock I was obliged to put in with my hands upon this job; I had only done one job before that, and I put the stock in the press with my hands on the job done on the day of the accident, but my hands were not exposed to the die at all on the other job. The stock to be operated on by the press in the job done previous to the day of the accident was put under the die by a wire. . . . On the day of the accident Mr. Lang set me to work on this press; he said that he had set up the die and that she was all right and ready for me to go to work as soon as I got through with the job I was working on.

" When I had used this press before there was a small box to catch the work as it came through under it. I do not know how large it was, but there was a different box under the machine at the time I was injured; the box that was under the machine the day I was injured was a larger one; it was from one quarter to one third larger; but I could not give the figures to show how much more space it occupied under the machine than the other

box occupied, but there was a space of fully a foot between the edge of the first mentioned box and the lever; there was only about a couple of inches for my foot to work in outside the lever on the box under the machine on the day of the accident; the first box was about a foot from my foot, and the second box was about two inches from my foot, and the second box was there at the time I was injured. . . . And I was working there I don't know exactly the time before I was hurt, but I noticed this box of tin was there and that it was interfering, and I got up and looked round for Mr. Lang, Sr., to ask him if he would have the box taken from there; I could not find him; he was not in the shop and I don't know where he was. I did not ask; I could not find him. So I went to work again and my foot caught somewhere between this box of tin and the lever when I went to take my foot off, so that instead of my foot going to its natural position and the die going up and stopping, it caused the die to revolve the second time upon my left hand as I was taking my work out. The die came down on my left hand; my foot caught in the side or edge of the box; I tried to pull it away; my foot was held there, so the die was half way down before I realized that my foot was held there, so I could not take it off, and just as soon as I found out that my foot was caught, my hand was under the die like that, and it was about that far from my hand before I realized that my hand was caught. . . . My foot got caught as I was taking it off, because that box of tin was too near and it interfered with the pulling of my foot back and it caught; there was no other reason that I know of."

On the cross-examination of the plaintiff, there were the following questions and answers on the subject of the box:

" *Q.* Who put the box in there that was there at the time that you were injured? *A.* The foreman of the shop and myself. — *Q.* That is, you went with the foreman and got the box? *A.* I did. — *Q.* And you knew what the box was used for? *A.* I knew it was a box full of all kinds of tin. — *Q.* Was there any cover to it? *A.* There was no cover, but it had sides. — *Q.* You took it with the superintendent and carried it to this machine, and placed it under the machine? *A.* I did. — *Q.* You carried it and placed it under the press that you were working on before you were injured? *A.* Yes, sir. — *Q.* And you knew the box

was there when you operated the machine that afternoon? *A.* I did. — *Q.* You said that just before you went to see Mr. Lang, Sr., and could n't find him, it interfered with you. What do you mean by that? *A.* I mean my foot would kind of strike the box as I pulled it over. — *Q.* So that afternoon when you had started to operate it you had discovered that the box was interfering with the use of the lever? *A.* I had. — *Q.* Why did you go to see Mr. Lang? *A.* Because it was put there by Mr. Lang's orders. — *Q.* Did you go to him because you wanted it removed, because you thought there was danger of your foot catching? *A.* Because I wanted it moved. — *Q.* Because you thought your foot might catch in it? *A.* I did."

At the conclusion of the evidence, the defendants requested the judge to rule that the plaintiff was not entitled to recover, and to order a verdict for the defendants. The judge refused both requests.

The jury returned a verdict for the plaintiff in the sum of $500; and the defendants alleged exceptions.

*G. C. Dickson, C. S. Knowles & W. B. Sprout*, for the defendants.

*F. M. Davis*, for the plaintiff.

BARKER, J. The danger of such an accident as that by which the plaintiff was hurt was not only obvious, but was so clearly and fully known to him and so clearly appreciated by him that solely because of it he stopped work and left his machine and went to find one of the defendants in order to have the cause of danger removed. Not finding the person whom he sought he went back to the machine and resumed work perfectly aware of the danger. This was not due care and was an assumption of the risk. He was old enough and intelligent enough to have known better and as he acted under neither ignorance nor constraint he has no cause of action and the jury should have been so told.

*Exceptions sustained.*